Assigned Estate of T. B. Allison.    Appeal of the First National Bank of Indiana.

*Assignment for creditors—Sale—Fraud—Surcharge of assignee.*

At a sale of an assignee for creditors the property was knocked down by the assignee for $929 to H. who was not present at the sale, and who had no knowledge of the transaction, and afterwards a deed was made to H. with the understanding that he should take the property in case a better purchaser could not be procured and he subsequently conveyed the land to Z., at the assignee's request, but neither H. nor Z. paid any money for the conveyances to them. After the deed to Z. was made, the assignee employed an agent who procured purchasers for the land for $3,225. The purchase money was paid to the assignee who paid $200 to Z., and $150 to the agent who procured the purchasers. *Held*, (1) that as it did not appear that Z. had done anything entitling him to commission, it was unjust to the trust estate to allow the assignee a credit for $200 paid him; (2) that the assignee should be surcharged with the difference between $929 and $3,225, less the sum of $150 paid to the agent.

Argued Oct. 18, 1897.    Appeal, No. 42, Oct. T., 1897, by First National Bank of Indiana, from judgment of C. P. Indiana Co., dismissing exceptions to confirmation of account.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Exceptions to confirmation of account of assignee of creditors. The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to the confirmation of the assignee's account.

*John P. Blair*, for appellant.—When a trustee sells to himself, directly or indirectly, the sale will be set aside, or the, trustee held accountable for the proceeds, at the instance of the cestui que trust: Lazarus v. Bryson, 3 Binn. 54; Chronister v. Bushey, 7 W. & S. 152; Webb v. Dietrich, 7 W. & S. 401; Beeson v. Beeson, 9 Pa. 279; Shuman's App., 27 Pa. 64; Rich v. Black & Baird, 173 Pa. 92; Taylor v. Haskell, 178 Pa. 106. ·

*J. N. Banks*, for appellee, cited Dyott's App., 2 W. & S. 557; Kutz's App., 40 Pa. 90.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 3, 1898:

In January, 1886, T. B. Allison executed a deed of voluntary assignment for the benefit of creditors, to the appellee, William C. Brown, who thereupon accepted the trust and entered upon the discharge of the duties thereof. Shortly afterwards the court on his petition ordered a sale of certain assigned real estate, including a tract of one hundred and fourteen acres known as the Schlemmer farm. After considerable delay, the assignee, in his return to a pluries order, reported the Schlemmer farm sold, August 30, 1887, to John Hill, for $929, and thereupon the sale was confirmed. While the assignee's deed for this land is dated October 13, 1887, it was not acknowledged until July 1, 1890. Two days later, for the alleged consideration of $1,200, Hill and wife conveyed the same to George D. Zeigler, who, with his wife, on July 1, 1893, executed a deed for the same to P. C. Muth and Jacob Buhite, for the consideration of $3,225, as expressed in the deed. After being cited to do so the assignee, on July 17, 1890, filed an account in which he charged himself with $929 as the amount realized from the sale of the Schlemmer farm. To this the appellant bank excepted, and on June 22, 1894, by leave of court, filed the following additional and more specific exception:

" Instead of charging himself with $929 realized from the sale of one hundred and fourteen acres of land in Canoe township, accountant should charge himself with either $3,250 or $3,500, the said land having been purchased by the said. W. C. Brown at the assignee's sale for his own benefit through John Hill, and afterwards sold or caused to be sold by said Brown for either $3,250 or $3,500, to Buhite and Muth at private sale, effected

by said Brown or through his agents; that these matters were unknown to exceptant when the previous exceptions were filed."

This exception was virtually dismissed by the learned judge who specially presided at the hearing, and that constitutes the main subject of complaint in this appeal. He in substance held that there was no such proof of "supine negligence," or "fraud" or "want of good faith" on the part of the trustee as would justify the court in sustaining the exception and surcharging the accountant accordingly. In this we think he was mistaken. Our consideration of the testimony has led us to a very different conclusion.

It clearly appears that Hill did not authorize the purchase of the farm. He was not present at the sale, and did not know until afterwards that the property had been bid off in his name. He paid no purchase money, nor did anyone pay any for him. In the course of his testimony he says: "Of course I didn't buy this Schlemmer piece at public sale, I consummated the sale. I didn't know it was knocked down to me at $929. Sheriff Brown told me of the sale, I think it was in 1887, along there somewhere. I didn't pay him any money. I think it was in July, 1890, sometime along there, he made me a deed. I didn't get my deed sooner, just because I was waiting to know whether I would get it. I agreed to take it at that price, but I didn't know but he could get a better price and would not let me have it. . . . From 1887 to 1890, I didn't go out to see this land. I waited to hear from it. I paid no taxes. I got no rents from it. Didn't get a dollar of the crops. I didn't hire anybody to look after it. I let it alone until I could hear from it, what they were going to do,—whether they were going to let me have it or not."

The assignee himself testified that he had the property bid off in the name of John Hill without the knowledge or consent of the latter. He further said: "I came home, made my return and took the deed down to John and John preferred not to take it, although he says, 'If you can't get anyone else to take it, come back and I will pay you for it.' I went away that day, a long time, and I saw George Zeigler one day; talked to him. George says, 'believe if I had it I could sell it.' So I asked him if he would take it and he said he would. Then I went down and got Mr. Hill to make the deed to George

Zeigler, and I told Zeigler I would help him to sell it; so I did, and I did help to sell it."

It appears from the testimony of these parties themselves that Hill was to have the farm only in the event that no other and better purchaser could be procured. In fact, the deed to Hill was not executed and delivered until a reasonable pros-pect of securing such purchaser was presented. Hill paid no money and received none. He appears to have been a mere conduit selected by the trustee for the purpose of passing the title to someone else at an enhanced price; and, upon his conveying to Zeigler, he virtually dropped out of the case. It is very evident that so far as he was concerned the scheme that was originally devised was carried out. The testimony of the trustee further shows that Zeigler took title to the farm for the sole purpose of finding a purchaser and effecting an advantageous sale, and that too was successful. The bona fides of the irregular and circuitous transaction, so far as the trustee—appellant—is concerned, depends on the purpose for which the title was conveyed first to Hill and afterwards by him to Zeigler. If it was done, not with the view of realizing a higher and better price for the benefit of the assigned estate, but for the purpose of benefiting the trustee personally, and that object was accomplished by the sale to Muth and Buhite, there cannot be any question that it was a bad faith transaction,—a fraud upon the assigned estate which should not be permitted to succeed in any court of justice. That it was such a transaction, —substantially as claimed by the appellant—appears to be clearly established by the evidence, the decided weight of which points unmistakably to that conclusion. All the facts and circumstances harmonize therewith, and cannot be reconciled with any other hypothesis that can be reasonably suggested. The conveyance from Hill to Zeigler was evidently procured for the purpose of ultimately effecting an advantageous sale for the appellee's personal benefit. It was the appellee who procured the agent Ham through whom the sale to Muth and Buhite was effected. It was he who gave said agent $150 for finding the purchasers. Ham testified that Brown, the appellee, ".always conveyed to me the impression that it was his land." When the purchasers were found it was Brown who dealt with them. Buhite so testified, and also said he had "never heard any fur-

ther than that it belonged to Captain Brown." When the consideration for the conveyance was paid, it was Brown's son who handled the money. It is also a significant fact that Zeigler paid nothing for the property at the time the deed to him bears date. In addition to all these, and other facts shown by the evidence, the uncontradicted testimony of Zeigler is that he realized not more than $200 from the transaction. Without further reference to the testimony in detail we have such a condition of affairs clearly established by the decided weight of the evidence as casts upon the appellee the burden of proving what disposition was made of the purchase money paid by Muth and Buhite, and that he acted in good faith in the entire transaction; and having failed to do either, he should be surcharged with the difference between the $929, with which he charged himself in his account, and the $3,225 consideration named in the deed to Muth and Buhite, except so much thereof as is shown to have been legitimately disbursed. It does not appear that Zeigler did anything that entitled him to compensation in the shape of commissions on the sale or otherwise, and it would be unjust to the trust estate to allow such payment. The same may be said of other payments or deductions made in furtherance of the attempt to defraud the trust estate. The only commission that can with any propriety be allowed is the $150 paid to the agent who procured the last purchasers without knowledge of the intended fraud. With this exception, the assignee should be surcharged with the difference above stated, with interest from July 1, 1893, the date of the last sale.

The decree of the court below is reversed and set aside, at appellee's costs, as to the matters complained of in the specifications of error, and, to the extent above stated, appellant's exception is sustained; and it is further ordered that the record be remitted to the court below with instructions to proceed, without unnecessary delay, to final decree in accordance with this opinion.